(98 South. 170)

No. 24936.

WETHERBEE et al. v. WEAVER BROS. & THOMPSON (EVANS, Intervener).

(Oct 29, 1923. Rehearing Denied by Whole Court Dec. 3, 1923.)

*(Syllabus by Editorial Staff.)*

Joint adventures ⬤=5(2)—Evidence held to sustain finding that intervener was entitled to part of profits of sale of timber.

In an action to recover profits on a purchase and sale of timber conveyed directly from plaintiffs' vendors to their vendees, wherein a third person intervened, claiming a right to one-third of such profits, on the ground of an agreement whereby intervener had secured an option to buy the timber, and plaintiffs had agreed to find purchasers therefor, each party to receive a third of the profits, evidence *held* to sustain a finding for intervener as against a contention that he was entitled to no compensation because he had withdrawn from the agreement before the sale was consummated.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Action by G. W. Wetherbee and others against Weaver Bros. & Thompson, wherein Zach Evans intervenes. Judgment for plaintiffs against defendants, and for intervener against defendants and plaintiffs appeal. Affirmed.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellants.

Campbell, Greenwood & Barton, of Palestine, Tex., and Hollingsworth B. Barret, of Shreveport, for intervener and appellees.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

LAND, J. On July 23, 1918, plaintiffs, G. W. Wetherbee and S. W. Tullos, sold to the Weaver-Hearne Lumber Company certain timber located in Anderson county, Tex. This company was later dissolved, and all of its assets were transferred to defendants, Weaver Bros. & Thompson, who assumed all

of the obligations and liabilities of said company.

Plaintiffs sue to recover the sum of $8,517 as the purchase price of said timber, and allege that, although the deed to said timber recites that said sum was paid in cash, the fact is that a draft for $6,517 was given for the payment of said purchase price, which was duly accepted by the said defendants, and the remainder of $2,000 was held until the removal of defects of title, and was to be paid when all of said timber is cut from the land.

Defendants do not contest this indebtedness; and, assuming the position of stakeholder, pray that they be permitted to deposit said fund in the registry of the court, as Zach Evans, intervener, claims a third interest in same, and that they be dismissed from this suit without cost.

Intervener alleges in his petition that plaintiffs sold said timber to the Weaver-Hearne Lumber Company for the sum of $22,500, realizing a profit of $11,475, the option price paid for said timber by plaintiffs being the sum of $11,043.

The demand of the intervener is for a third interest in the profit of $11,475, or the sum of $3,819, with legal interest from January 1, 1918.

This demand is based upon an alleged agreement between Wetherbee and Tullos, plaintiffs, and Zach Evans, intervener, by the terms of which the intervener undertook to secure options to buy said timber, and the plaintiffs to find purchasers for same, and to pay all the expense incident to and connected with the carrying of said options until a sale could be effected, each of said parties to receive a third of the profits.

Defendants admit in their answer that they took the deeds to this timber directly from the owners, and that the sum sued for by plaintiffs represents the profits arising from the transaction. Defendants also ad-

mit that the intervener served notice on them of his claim of a third interest in said profits.

The lower court rendered judgment against defendants in favor of plaintiffs for $4,344.66, and in the further sum of $1,333.33 to be paid when all timber is cut and removed from the property.

Judgment was rendered against defendants in favor of the intervener also for $2,172.33, and in the further sum of $666.67 to be paid when the timber is cut and removed.

Plaintiffs have appealed, and assign as error:

"(1) The court erred in holding that the intervener was entitled to any compensation, or was interested in any way in the deal finally consummated for the sale of the timber in question.

"(2) The court erred in awarding the intervener any judgment at all and in finding as a fact that he was entitled to any judgment for any commission or interest in the timber."

There is no dispute between plaintiffs and intervener as to the terms of the original agreement between them. Intervener was to obtain options on timber in Texas, and plaintiffs were to pay expenses connected therewith, and to secure a purchaser. The profits were to be divided in the proportion of one-third to each. Plaintiffs contend that intervener withdrew from this agreement, and attempted to sell on his own account to Driscoll Bros., of Marshall Tex., the McDonald timber on which he had an option for the benefit of the partnership, and that intervener informed plaintiff, Tullos, that he had made this sale, and refused to allow plaintiffs to participate in the profits, on the ground that they had no interest in the transaction, as the option, according to the testimony of Tullos, which intervener had secured on this timber in favor of the partnership, had expired when the sale was made. But, according to the testimony of Evans, the intervener, the reasons for denying to plaintiffs any participation in profits in this trans-

action was because plaintiffs had not obtained the Driscolls as purchasers, and would not be entitled to the commissions for this reason. Evans, the intervener, and McDonald, the owner of the timber, both testify that plaintiffs had failed to pay draft accompanying deed to this timber, when forwarded to a bank in Shreveport, and that the draft had been returned. Plaintiffs deny this. As a matter of fact, however, the sale to the Driscolls by intervener was never consummated. At first they agreed to buy and afterwards declined to take the McDonald timber. About March 20, 1918, plaintiff Tullos was advised by intervener of the purported sale by him to the Driscolls. On March 21st Tullos paid a visit to intervener at his home in Longview, protested against the Driscoll deal, and was denied any interest in same by the intervener. Tullos testifies that at this juncture he immediately took steps to protect himself and Wetherbee; that he called McDonald at Neches, Tex., over the telephone from Longview after his break with Evans, intervener, to ascertain when Evans' option in the McDonald timber expired; that he was informed by McDonald that it was at an end Friday night. Tullos requested McDonald to notify him if no purchaser was obtained by that time, and stated that he would buy the timber on the same terms McDonald had agreed with Evans. On Saturday, March 23, 1918, McDonald wired Tullos: "Come down Sunday night will sell you land." This telegram was received by Tullos at Shreveport, La., late Saturday evening. Tullos obtained a check for $1,000., the amount of his option, on Sunday, and left Sunday night for Neches, Tex., so as to be at McDonald's house early Monday morning. He took an option that day for 60 days on the McDonald timber, and paid $1,000 for it. Tullos testifies that Evans had nothing to do with the obtaining of this option. Evans, however, states that he met Tullos at the

train on the morning of his arrival, and that he agreed to obtain the option under the original agreement upon the basis of one-third profit to each.

McDonald's testimony is that Evans and Tullos had a conversation for 20 or 30 minutes on the platform before coming to his store, which was located at about 50 or 60 yards from the depot, and that, when Tullos was introduced to him by Evans the latter said:

"Well, Brother Mack, we have got everything arranged to go down and put up the $1,000 and close that thing."

Evans also testified that he had McDonald wire Tullos to come to Neches. McDonald, in reply to the question, "Did Mr. Evans ask you to wire him [Tullos] to come down?" answered, "I think so."

McDonald also states that it was his understanding that the option obtained by Tullos was an extension of the old option that they had gotten together.

"Q. The deal that you made with Tullos was a new deal? A. Well, I did not understand it that way at the time, because Mr. Evans came there and they went over and talked the matter over, and came up and said, 'We are ready to put up the thousand dollars.' Q. Who said that? A. Evans. Q. What did Mr. Tullos say about putting it up? A. Says 'All right'; said he had the money to put up."

As late as May 30, 1918, and long after Tullos had paid for this option, Wetherbee, who is one of the plaintiffs, and who represented Tullos during his absence for several months in California, wrote the following letter to Evans:

"Palestine, Texas, May 30, 1918.

"Mr. Zach Evans, Longview, Texas—Dear Sir: I am inclosing a deed on this 125-acre tract of timber for you to sign, so when I take up the draft at bank I can transfer timber to company. This will save any delay in transferring when we complete our other matters. I was in hopes our matters would be completed this week, but it is working very slow; however, please attend to this matter at once in morning and mail at once. It is only necessary you sign deed before notary and not necessary your wife sign with you as Mrs. Evans is not mentioned in deed from Angier. Hoping everything is going well with you, I remain,

"Yours truly,          Geo. W. Wetherbee."

Evans had a deed to the Angier tract, referred to in above letter. He agreed to surrender this deed and consented that the deed be destroyed and that the conveyance be made direct to the Weaver-Hearne Lumber Company.

This letter shows that he held an option on the Angier tract, included by plaintiff in sale to said lumber company, and embraced as one of the tracts under the original agreement of division of profits. This letter may be said to be a written acknowledgment, after Tullos obtained his option, of the joint interest of Evans, intervener, in the profits arising from said sales.

This letter is of date May 30, 1918. The Tullos option would have expired on June 1st. It was extended at the solicitation of Evans three days beyond the date of the expiration when the deal was closed.

Under this state of facts, we are of the opinion that Evans has made out a case justifying his recovery of one-third of the profits in controversy. His testimony is corroborated by McDonald, the owner of the timber, and by the letter written by Wetherbee to him. The disagreement of the parties as to the Driscoll deal is therefore unimportant, as the breach was evidently healed and the original agreement reinstated.

The only evidence in the record as to the amount of profits involved is contained in the admissions made by defendants in their answer. The judgment in favor of plaintiffs and the judgment in favor of intervener are based upon the sum claimed by plaintiffs in their petition, and must be accepted as the correct amount of profits to be divided.

The judgment appealed from is therefore affirmed, at the cost of the appellants.

Rehearing denied by the WHOLE COURT.